UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JIMMIE C. ROWE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:04CV1272 HEA |
| ROADWAY EXPRESS, INC., | ) | |
| Defendant. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, [#36]. Plaintiff has responded to the motion, and the issues have been fully briefed. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## Facts and Background

Plaintiff brings this action pursuant to the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, based on the alleged retaliatory discharge he suffered at the hands of his employer, Defendant Roadway Express, Inc. Plaintiff claims that Defendant discharged him from his job as a truck driver in retaliation for exercising his rights under FMLA and that Defendant tortiously invaded Plaintiff's privacy by disclosing embarrassing private medical information about Plaintiff to other employees. Plaintiff also alleges Defendant tortiously interfered with his contractual relations and business expectancies by providing incorrect information to prospective

employers, and that Defendant violated the Missouri's Service Letter Statute, MO. REV. STAT. § 290.140, by failing to provide Plaintiff with proof of employment when requested.

From 1983 until the time of his discharge, Plaintiff had worked for Defendant as a "city driver" and a "switcher." Plaintiff and other qualified employees were eligible to bid for assignments into either the "city driver" or "switcher" positions at various times throughout the course of a given year. Defendant admits that because employees can move back and forth frequently between the two positions, it generally does not reflect these position changes in its internal records or database.

Plaintiff was a member of Teamsters Local 600 ("the Union") and the terms and conditions of Plaintiff's employment were governed by the applicable collective bargaining agreement. Plaintiff claims that while employed by Defendant, he suffered from major depression, a sleep disorder, and various physical injuries, which constituted "serious health conditions" within the meaning of FMLA, in that they required the "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). In September 2001, Plaintiff requested and was granted intermittent medical leave pursuant to the Act. He returned to full-time work with Defendant approximately a year later.

On September 18, 2002, Plaintiff and another employee, John Ashmore, were involved in an argument, wherein both men shouted and cursed at one another. A

female supervisor, Jeanne Burns, intervened and ordered Plaintiff to come to her office. Thereafter, it was reported that Plaintiff's cursing was directed at Ms. Burns. Based on this initial report, Plaintiff was told that he would be discharged. Subsequently, conflicting information was received regarding whether Plaintiff's statements had been directed at Ms. Burns or Mr. Ashmore. In light of the conflicting information, Defendant elected not to discharge Plaintiff and no written notice of discharge was ever provided to Plaintiff.

Based on Plaintiff's prior medical history and his actions on September 18, 2002, Plaintiff was temporarily removed from service [1] and directed to undergo a fitness for duty examination by a psychiatrist, Dr. Wayne Stillings.[2] In a report dated October 3, 2002, Dr. Stillings determined Plaintiff was unfit for duty.[3] A copy of the report was reviewed by managers, Lou Riccitelli, Mike Reidy, and Joe Russom because of their involvement in determining Plaintiff's employment status and/or defending his Union grievance. A copy of the report was also reviewed by the Union Business Agent (whose name was not provided to the Court) and utilized as evidence during a closed

---

[1] Plaintiff filed a Union grievance regarding his removal from service.

[2] Plaintiff submits that never before has Defendant directed a driver to undergo a psychiatric examination, even in the case of a driver who left his truck on the side of I-70 and ran naked down the highway carrying a cross.

[3] Article 47 of the Union's collective bargaining agreement allowed Plaintiff and the Union to obtain a second doctor's opinion. If a disagreement between Defendant's doctor and Plaintiff's doctor occurred regarding fitness for duty, Article 47 provided that the opinion of a third doctor, selected by the first two doctors, would be final.

grievance hearing before members of the grievance committee. Based on Dr. Stilling's findings, Plaintiff was formally removed from service, but then reinstated through the grievance procedure of Plaintiff's Union. Plaintiff was not immediately allowed to resume his regular duties.

Thereafter, Plaintiff sought a second opinion regarding his fitness for duty form his personal psychiatrist, Dr. Anderson. Dr Anderson found Plaintiff to be fit for duty and a report stating as such was mailed to Defendant in November, 2002. In January, 2003, however, Plaintiff had a physical altercation with John Ashmore after encountering him at a public gas station. Both Plaintiff and Ashmore were discharged as a result of the incident. After filing Union grievances, both men were reinstated to their positions, however, Plaintiff was not allowed to return to his normal duties until his fitness for duty was determined.

On August 12, 2003, after being determined fit for duty by a third doctor, Plaintiff returned to work and resumed his normal duties. After only a few days back on the job, Plaintiff wrote a letter to Defendant's Human Resources Manager, Martin Younglove, to complain of harassment by co-workers and to notify him he had been exposed to an offensive work environment since the co-worker comments indicated they had been provided information about Plaintiff's mental condition.

On August 20, 2003, Terminal Manager, Lou Riccitelli (not Plaintiff's supervisor), confronted Plaintiff with the letter written to Younglove and demanded

Plaintiff discuss it with him. Plaintiff alleges he experienced symptoms of a panic attack during this confrontation and requested to take medical leave immediately so that he could manage his symptoms. Riccitelli refused to grant Plaintiff medical leave, and continued to demand that Plaintiff come to his office to discuss the letter. Plaintiff refused. Riccitelli allegedly gave Plaintiff a direct order to come to his office, but Plaintiff insisted on the need to first manage his symptoms. Riccitelli then informed Plaintiff he would give Plaintiff a ten-minute "cooling off period" to reconsider his refusal to discuss the letter.

Pursuant to the Memorandum of Understanding between Defendant and Plaintiff's Union, employees are deemed to have "voluntarily quit" their positions after refusing a reasonable work assignment. The memorandum provides in relevant part as follows:

> The parties recognize that where it can be proven that an employee arbitrarily and for no justifiable reason refuses to perform a reasonable work assignment after being given ample opportunity by the employer to make a clear-minded decision to perform such assignment, may be considered as having voluntarily quit his job pursuant to Article 43, Section 1.

After regaining his calm, Plaintiff attempted to talk to Riccitelli about the letter, but by this time, Riccitelli refused to see Plaintiff. Instead, Riccitelli discharged Plaintiff and subsequently sent Plaintiff a letter indicating that Defendant had accepted Plaintiff's "voluntary resignation." Plaintiff disputed that he voluntarily resigned and

filed a grievance regarding the discharge/voluntary resignation. While the grievance committee is alleged to have heard evidence that Plaintiff asked to take medical leave, it made no determination as to whether Defendant violated Plaintiff's FMLA rights. On September 9, 2003, the committee concluded that Plaintiff's actions on August 20, 2003 amounted to a voluntary resignation.

Subsequently, Plaintiff claims Defendant has made disparaging remarks about Plaintiff in response to inquiries from prospective employers. Plaintiff claims Defendant has made false claims to such prospective employers, including that since 1984, Plaintiff had only ever held the position of "switcher," and that he never drove trucks for Defendant either outside the St. Louis metropolitan area as an over-the-road driver, or within the metropolitan area as a local or city driver. Plaintiff also alleges he has repeatedly requested a letter of dismissal from Defendant, which would provide Plaintiff with proof of his years of experience as a truck driver. Plaintiff complains that such evidence of employment was never provided by Defendant in violation of Missouri's Service Letter Statute, § 219.140.

Defendant now moves for summary judgment on the grounds that Plaintiff cannot establish that the cause of his discharge was retaliation for exercising his rights under FMLA. Defendant also argues it is entitled to summary judgment on Plaintiff's claims for invasion of privacy, tortious interference, and violation of Missouri's Service Letter Statute.

## **Standard of Review**

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Employers Mut. Cas. Co. v. Wendland & Utz,* Ltd, 351 F.3d 890 (8th Cir. 2003); *Enter. Bank v. Magna Bank* 92 F.3d 743, 747 (8th Cir. 1996). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enter. Bank*, 92 F.3d at 747. Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." *Wilson v. Intel Bus. Maces. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995); *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "The nonmoving party is entitled to benefit of all reasonable inferences to be drawn from the underlying facts in the record." *Widoe*

*v. Dist. # 111 Otoe County Sch.,* 147 F.3d 726, 728 (8th Cir.1998). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322; *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 791 (8th Cir. 2004). The Court will review the facts in this case with the stated standards in mind.

## Discussion

**FMLA Claims**

The Family Medical Leave Act provides eligible employees up to twelve work weeks of unpaid leave in any twelve-month period and prohibits employers from discriminating against their employees for exercising their rights under the Act. 29 U.S.C. §§ 2612, 2615(a)(2). Retaliating against an employee for the exercise of their rights under the Act is actionable. *Smith v. Allen Health Systems, Inc.,* 302 F.3d 827, 832 (8th Cir. 2002) (citing *Darby v. Bratch,* 287 F.3d 673, 678 (8th Cir. 2002)).

An employee can prove FMLA retaliation circumstantially, using a variant of the method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). To establish a *prima facie* case of retaliation under FMLA, a plaintiff must

show that (1) he exercised rights afforded by the Act; (2) he suffered an adverse employment action; and (3) there was a causal connection between his exercise of rights and the adverse employment action. *Smith,* 302 F.3d at 832. If the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual. *Id.* at 833 (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc)). A plaintiff is then obliged to present evidence that (1) creates a question of fact as to whether a defendant's proffered reason was pretextual and (2) creates a reasonable inference that the defendant acted in retaliation. *Id.* To carry the burden of showing pretext, a plaintiff must show that the employer's justification for the firing was unworthy of credence. *Id.* at 833-34 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000)).

It is undisputed that in September, 2001, Plaintiff took intermittent leave pursuant to the Act and that he subsequently suffered an adverse employment action. Plaintiff argues the timing of Defendant's actions are evidence of a causal connection. The Eighth Circuit, however, has stated that generally, "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Id.* (quoting *Kiel,* 169 F.3d at 1136). But a *pattern* of adverse employment actions that occur just after the protected activity can be enough evidence to satisfy the causation requirement. *Id.*

(citing *Bassett v. City of Minneapolis,* 211 F.3d 1097, 1105-06 (8th Cir. 2000) (extensive pattern of protected activity followed by disciplinary measures established causation)). The Eighth Circuit has also held that even without a pattern, the timing of one incident of adverse employment action following protected activity sufficed to establish causal connection. *Id.* (citing *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1193-94 (8th Cir. 1995) and *Sprenger v. Federal Home Loan Bank,* 253 F.3d 1106, 1113-14 (8th Cir. 2001) (temporal proximity sufficient to establish prima facie case of disability discrimination, but not to show pretext)). The length of time between the protected activity and the adverse action is important. *Id.* at 833. The Supreme Court has stated: "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Id.* (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).

In this case, the temporal proximity between Plaintiff's first request for intermittent leave under the Act in September, 2001 and the adverse employment action that occurred in September, 2002 is not close. Indeed, it is arguable whether an adverse employment action even took place, since Plaintiff was never discharged in September, 2002. In the light most favorable to Plaintiff, however, this Court will consider Defendant's direction of Plaintiff to submit to a psychiatric evaluation as an

adverse employment action. Nonetheless, the proximity of Plaintiff's request for leave in 2001 to the subsequent psychiatric evaluation mandate is not "very close" as required by precedent. Plaintiff has failed to establish a causal connection between the September, 2001 request for intermittent medical leave and the subsequent adverse employment action in September, 2002. Thus, Plaintiff has failed to establish a *prima facie* case of retaliation under FMLA.

As for the incident which took place on August 20, 2003 between Plaintiff and Terminal Manager, Lou Riccitelli, the temporal proximity of the protected activity and the adverse employment activity is unmistakably close. After Plaintiff was confronted by Riccitelli with the letter Plaintiff had written to Younglove, Plaintiff experienced a panic attack and requested medical leave pursuant to FMLA to manage his symptoms. Plaintiff was terminated from employment that day, thus the temporal proximity of Plaintiff's request for leave and his subsequent termination is sufficient to establish a *prima facie* case of retaliation under FMLA.

Defendant claims it has evidence of a reason other than retaliation for Plaintiff's termination--that Plaintiff refused to comply with Riccitelli's requirement that Plaintiff come to his office to discuss the letter. Defendant contends that Plaintiff voluntarily quit his job pursuant to the Memorandum of Understanding which states that an employee is deemed to have voluntarily quit if he "arbitrarily and for no justifiable reason refuses to perform a reasonable work assignment." The Court, however, does

not find that Plaintiff's perceived need to manage his panic attack symptoms was arbitrary or unjustifiable. It is reasonable to assume that given Plaintiff's psychiatric history, he may require more time to collect himself in a stressful situation than the average person. Furthermore, a request to come to a manager's office (notwithstanding the fact that the manager was not Plaintiff's supervisor) cannot be interpreted as a reasonable "work assignment" under the meaning of the Memorandum of Understanding between Defendant and the Union. Therefore, Plaintiff has sufficiently created a question of fact as to whether Defendant's proffered reason for the August 20, 2006 termination was pretextual and has created a reasonable inference that Defendant acted in retaliation in violation of FMLA. Defendant, therefore, is not entitled to summary judgment on this claim.

**Invasion of Privacy**

Defendant next claims summary judgment is appropriate on Plaintiff's invasion of privacy claim. Plaintiff's invasion of privacy claim relates to Defendant's distribution of Dr. Stillings' psychiatric evaluation to fellow employees of Defendant who did not have a legitimate interest in the information. Defendant claims it distributed the report only to certain individuals with a legitimate interest in its contents.

Pursuant to Missouri law, a tortious invasion of privacy claim under the "public disclosure of private facts" theory requires proof of the following elements: (1) publication or publicity; (2) of private matters in which the public has no legitimate

interest; (3) so as to bring shame or humiliation to a person of ordinary sensibilities; and (4) the absence of either waiver or privilege. *Childs v. Williams,* 825 S.W.2d 4, 7 (Mo. App. 1992) (citing *Y.G. v. Jewish Hosp. of St. Louis,* 795 S.W.2d 488, 498-99 (Mo. App. 1990)).

Plaintiff alleges the distribution of distribution of the psychiatric evaluation, was a "publication" or "publicity" under Missouri law. The term "publication" means: publicity "in the sense of communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *Id.* at 8 (quoting *Brown v. Mullarkey,* 632 S.W.2d 507, 509 (Mo. App. 1982)). In *Childs,* the Missouri Appellate Court discussed the comment to Section 652D of the Restatement (Second) of Torts pertaining to public disclosure of private facts and elaborates on the quality and degree of publicity required:

> The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication" as that term is used in § 577 in connection with liability for defamation. *"Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.* The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

*Childs,* 825 S.W.2d at 8 (citing RESTATEMENT (SECOND) OF TORTS § 652d comment (1977) (emphasis added by the *Childs* court)).

It is undisputed that the psychiatric evaluation prepared by Dr. Stillings was not a communication directed at the general public. Nor, in fact, was the letter written by Plaintiff to Younglove, especially when considering the contents of the letter and the fact that Younglove is the Human Resource Manager.[4] Defendant contends, however, that Younglove only shared Dr. Stillings' report with three managers and Defendant's Union Business Agent, each of whom had an interest in the report's contents either for purposes of determining Plaintiff's employment status and his fitness for duty, or for defending Plaintiff's Union grievance concerning his removal from service. While the initial publication of the report may have been to individuals with a legitimate interest in the report's contents, Defendant has not shown that the publicity was not likely to reach the general public or that it was not substantially certain to become one of public knowledge.

Plaintiff responds by pointing to evidence that Lou Riccitelli told another employee, Alex Dwyer, that "J.R. is crazy. That's why we got rid of him." Plaintiff also produced evidence by way of a co-worker's affidavit that the attorney for John Ashmore attempted to introduce a copy of Dr. Stillings' report into evidence while in court. In fact, Plaintiff's purpose for writing the letter to Younglove in the first place

---

[4]Although not an issue presently before this Court, the Court is perplexed as to how a letter, written in confidence to a human resources manager, could come into possession by another manager who is not a supervisor of Plaintiff's and without a genuine need to know the concerns expressed therein.

was to express his concern that his mental condition was a topic of conversation among his co-workers and to seek Younglove's assistance in regaining his reputation and a stable work environment. It is reasonable that such publicity of Plaintiff's psychiatric evaluation would bring him shame and or humiliation. Moreover, Defendant has failed to show the existence of any waiver or privilege. This, the Court finds, is sufficient evidence to show a dispute as to a genuine issue of material fact. Defendant, therefore, is not entitled to summary judgment on this claim.

**Tortious Interference**

Plaintiff alleges Defendant tortiously interfered with a business expectancy after Plaintiff's separation by providing false information to prospective employers and causing them to conclude Plaintiff was only a "switcher" lacked truck-driving experience. Defendant contends it is entitled to summary judgment on this claim, because Plaintiff cannot establish the elements of this claim. The Court agrees.

Under Missouri law, the elements of tortious interference with a contract or business expectancy are (1) a contract or valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract relationship; (4) the absence of justification; and (5) damages. *Wash Solutions, Inc. v. PDQ Mfg., Inc.,* 395 F.3d 888, 895 (8th Cir. 2005) (citing *Serv. Vending Co. v. Wal-Mart Stores,* 93 S.W.3d 764, 769 (Mo. App. 2002)). The existence of a valid business expectancy will not be found

where the facts showed a mere hope of establishing a business relationship which was tenuous. *Id.* "In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged. If it is not, there was nothing for defendants to have interfered with." *Id.* at 895-96 (citing *Serv. Vending Co.*, 93 S.W.3d at 764).

Defendant alleges Plaintiff has failed to provide concrete evidence that a valid business expectancy even existed. Assuming one did, however, Plaintiff cannot establish the third element--that Defendant intentionally interfered with the business expectancy by inducing or causing a breach of the contract relationship. There is no evidence that Defendant intentionally provided incorrect information to prospective employers regarding Plaintiff's employment history. Defendant admits that it does not diligently manage its employee database by accurately indicating the job titles and positions held by its current and former employees.[5] While it is unfortunate that a reputable corporation would sustain such deplorable bookkeeping practices, it is not evidence an intentional interference with Plaintiff's business expectancy. Therefore, Defendant is entitled to summary judgment on this claim.

**Service Letter Statute**

---

[5]As stated in the facts and background section of this Order, Plaintiff and other qualified employees were eligible to bid for assignments into either the "city driver" or "switcher" positions at various times throughout the course of a given year. Because employees are able to move back and forth frequently between the two positions, Defendant's internal records or database generally do not reflect these position changes.

Finally, Plaintiff argues that Defendant violated the Missouri's Service Letter Statute, MO. REV. STAT. § 290.140, by failing to provide Plaintiff with proof of employment when requested. Section 290.140 provides as follows:

> 1. Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in service of said corporation for a period of at least ninety days, shall be discharged or voluntarily quit the service of such corporation and who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or voluntarily quit, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the receipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.
>
> 2. Any corporation which violates the provisions of subsection 1 of this section shall be liable for compensatory but not punitive damages but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages; but no award of punitive damages under this section shall be based upon the content of any such letter.

MO. REV. STAT. § 290.140(1) & (2).

Plaintiff claims he sent two letters via certified mail, dated September 24, 2002 and August 25, 2003, to Martin Younglove requesting a service letter and referencing the service letter statute.[6] Plaintiff did not receive the service letter from Defendant as

---

[6] Plaintiff also alleges he sent a certified letter dated September 24, 2002 to Lou Riccitelli requesting a service letter and referencing the statute.

- 17 -

requested, and Defendant admits it did not send Plaintiff a service letter. Defendant argues, however, that Plaintiff's employment did not technically end until *after* Plaintiff submitted the service letter requests, so issuance of the letter was not required.

Because the Court has already concluded that Plaintiff was not actually discharged in September, 2002, the statute does not apply to Plaintiff's September 24, 2002 certified letters to Younglove and Riccitelli requesting a service letter. As for the August 25, 2003 certified letter to Younglove, however, the Court will discuss the relevant law as it pertains to the application of the statute.

Defendant argues that although Plaintiff requested a service letter on August 25, 2003, Plaintiff was not actually discharged until after the grievance process was finalized on September 9, 2003. Defendant claims a termination must be final before the service letter statute applies and cites to *Arbuckle v. Fruehauf Trailer Co.,* 372 S.W.2d 470 (Mo. App. 1963) for authority on this issue. In *Arbuckle,* the court found that the service letter statute did not apply when the employee and employer had contracted to provide for arbitration to review a termination. *Id.* at 473 (citing *Baron v. Kurn,* 164 S.W.2d 310 (Mo. 1942) (an employee who has a union to bargain on his behalf and who agrees to work and does work under the contract adopts that contract, as his contract of employment and is entitled to its benefits as well as its obligations).

The *Arbuckle* court concluded that while the employee was pursuing arbitration to review his termination, the termination was only "qualified or conditional" since it

could be set aside. *Id.* at 474. "Certainly where the arbitration of a discharge is timely and successfully pursued by an employee, there has been no final or effective discharge and the status of being 'in the service of the corporation' is preserved." *Id.* Thus, even though the employee was not in the employer's service while pursuing arbitration, the service letter statute did not apply until the termination was final. *Id.*

In this case, Plaintiff voluntarily quit or was discharged from his position on August 20, 2003.[7] Thereafter, Plaintiff initiated the grievance process pursuant to the collective bargaining agreement between Defendant and Plaintiff's Union. The grievance proceedings were not finalized until September 9, 2003, when the grievance committee upheld Plaintiff's alleged voluntary quit. Under Missouri law, because Plaintiff's was pursuing a review of his termination with the grievance committee, the termination was only "qualified or conditional" since it could be set aside. Even though Plaintiff was not in the Defendant's service during the grievance process, the service letter statute did not apply until the termination was final. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim for violation of Section 290.140 of the Missouri Revised Statutes.

## **Conclusion**

---

[7]As discussed, *supra*, a genuine issue of material fact exists as to whether Plaintiff voluntarily quit or was discharged in violation of FMLA.

For the reasons stated above, Defendant's Motion for Summary Judgment is granted in part and denied in part.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [#36] is granted in part and denied in part; Defendant's motion is granted as to Plaintiff's claims for (1) violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.,* for the adverse employment action which occurred in September, 2002; (2) tortious interference with a business expectancy; and (3) violation of the Missouri Service Letter Statute, Mo. Rev. Stat. § 290.140; Defendant's motion is denied in all other respects.

Dated this 1st day of May, 2006.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE